IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
May 11, 2005 Session

# CHRISTOPHER COOK v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Davidson County**
**No. 2000-T-108     Monte Watkins, Judge**

---

**No. M2004-02251-CCA-R3-PC - Filed July 22, 2005**

---

The petitioner, Christopher Cook, appeals the denial of his petition for post-conviction relief, arguing that he received ineffective assistance of trial counsel. After our review, we affirm the post-conviction court's denial of the petition.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which NORMA MCGEE OGLE and ROBERT W. WEDEMEYER, JJ., joined.

Kenneth Quillen, Nashville, Tennessee, for the appellant, Christopher Cook.

Paul G. Summers, Attorney General and Reporter; Preston Shipp, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; and Roger Moore, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

## FACTS

According to the State's recitation of the facts at the submission hearing, the petitioner was involved in an automobile accident on September 15, 1999, which injured the two occupants of the vehicle he struck. The petitioner was also injured, and blood tests revealed minimal amounts of drugs in the petitioner's system at the time of the accident. Subsequently, on April 3, 2003, he pled guilty to DUI, first offense, and two counts of reckless endangerment and was sentenced to consecutive terms of eleven months, twenty-nine days for each offense, all suspended except for forty-eight hours, with the balance to be served on probation. No direct appeal was filed. On March 25, 2004, the petitioner filed a petition for post-conviction relief, claiming the facts were "insufficient . . . to support the guilty pleas"; "[t]he trial court failed to adequately advise [him] of his constitutional rights"; the pleas were involuntary and "not knowingly and intelligently made"; and trial counsel was ineffective for "not adequately investigat[ing] the underlying facts."

At the August 4, 2004, evidentiary hearing, Wayne Cook, the petitioner's father, testified that the petitioner was "[one] hundred percent" disabled as a result of the accident and received social security disability benefits. He acknowledged that the petitioner can "walk, talk, drive" and "[t]ake care of himself." He assisted the petitioner in retaining trial counsel and said he and the petitioner met twice with counsel: once at the retaining session and once in court. Cook said he "accept[ed] the plea bargain for [the petitioner]" because he had the petitioner's power of attorney. Explaining that the decision to plead guilty had been more his decision than the petitioner's, Cook said, "[The petitioner] wanted to take it further, because he definitely knew that he was not drinking that particular day. . . . I was looking at money, record for him in the future, and so on like this, and I made the decision." He said they accepted the plea bargain "fifteen to twenty minutes" after learning the results of the petitioner's blood test. He acknowledged that the petitioner was not under the influence of drugs, other than his prescribed medications, on the day of the guilty pleas.

Thomas Buhler, the petitioner's first cousin, testified that he briefly talked with the petitioner on the morning of the accident and observed no signs of alcohol intoxication, which "[he] would have smelled" because "[the petitioner] was like real close to [him]." Buhler acknowledged that he did not know if the petitioner had taken any drugs before the accident. Buhler said that trial counsel never contacted him.

Tonya Whited, the petitioner's girlfriend at the time of the accident, testified that she ate lunch with the petitioner "ten or fifteen minutes before" the accident and he was "[c]ompletely sober." Whited said the petitioner was seeing a psychiatrist and taking "Valium[] for his nerves, and some type of depression medicine." She said the petitioner's medication did not intoxicate him but acknowledged he had suffered two seizures in the past. She did not know why there was marijuana in the petitioner's system on the day of the accident. She said trial counsel never contacted her.

The petitioner testified that taking his case to trial would have cost an additional five thousand dollars. He was not asked about the voluntariness of his pleas, the meetings he had with trial counsel, the facts of the accident, or how trial counsel should have known that Tonya Whited or Thomas Buhler would aid the defense.

Trial counsel testified he had been practicing law since December 1987 and had focused his practice on "DUI defense and other alcohol and drug related vehicular assaults, vehicular homicides, and that sort of thing" since December 1996. He said he was a founding member of the National College for DUI Defenses and had "probably had over, since 1996, at least two hundred hours of . . . continuing education in this field." He stated he had represented "[h]undreds" of clients charged with DUI-related offenses and could "look at a case and determine what the issues are and what the areas with problems are going to be. And I understand – especially here in Davidson County – what the jury attitudes are toward these cases, and have a good feel for that."

Counsel testified he interviewed the petitioner about the accident, but the petitioner "just didn't have any recollection" as a result of the serious head injury he sustained in the accident. According to counsel's notes, the accident occurred before the petitioner picked Whited up for lunch

and the petitioner was unable to give counsel the name of anyone he had seen before the accident. After the petitioner's toxicology report revealed marijuana, Diazepam, and Lidocaine in his system, counsel researched the drugs and learned that Diazepam was a calming agent and that Lidocaine could cause dizziness and drowsiness. Discussing his view of the case after receiving the toxicology report, trial counsel explained the weaknesses in the defense:

> I am looking at this: I've got an accident with no explanation. I've got two little old ladies that are injured. I've got a person with drugs in their system. And, I, also, know something that I believe the State doesn't know about his prior conviction history. And based on that I entered discussions with [the petitioner] and his dad about what we should do.

Trial counsel acknowledged that the petitioner had no convictions prior to the September 15, 1999, accident but had been convicted of DUI in Hickman County before he was arrested for the offenses related to the accident.

Counsel also explained the problem in defending a DUI charge when his client had measurable amounts of drugs in his system at the time of the accident:

> [J]urys are, kind of, anti DUI, whether it's drugs or alcohol, or whatever it is. And when a jury hears the numbers, and they know that someone has got that in their system, then it is not good. . . . In my experience, that's something I would rather them not know about if I can keep them from knowing about it.

Counsel recalled that the petitioner, not his father, made the decision to plead guilty. He said he discussed the petitioner's rights with him and believed he understood them. Counsel's "number one priority was one: No felony conviction; two, no enhanced DUI conviction." He said that neither the petitioner nor his father "express[ed] . . . any dissatisfaction with [his] service or the outcome of this case."

Medical records presented at the evidentiary hearing showed that the petitioner had a "possible seizure disorder" and previously had become unconscious while driving and run his car into a ditch. Trial counsel said he did not remember seeing that information. Counsel acknowledged that he did not interview any witnesses.

## ANALYSIS

The petitioner's sole claim on appeal is that he received ineffective assistance of trial counsel in that counsel "failed to conduct a reasonable investigation." Specifically, he argues trial counsel was ineffective in not interviewing Tonya Whited and not "even read[ing] the discovery material provided by the State," asserting that these records would have revealed previously he had a seizure while driving and "was unconscious when his car crossed the center line."

-3-

In order to ascertain the competence of counsel, Tennessee courts have applied standards developed in federal case law. See State v. Taylor, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (noting that the same standard for determining ineffective assistance of counsel that is applied in federal cases also applies in Tennessee). The United States Supreme Court articulated the standard in Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), which is widely accepted as the appropriate standard for all claims of a convicted petitioner that counsel's assistance was defective. The standard is firmly grounded in the belief that counsel plays a role that is "critical to the ability of the adversarial system to produce just results." Id. at 685, 104 S. Ct. at 2063. The Strickland standard is a two-prong test:

> First, the petitioner must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the petitioner by the Sixth Amendment. Second, the petitioner must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the petitioner of a fair trial, a trial whose result is reliable.

Id. at 687, 104 S. Ct. at 2064. The Strickland Court further explained the meaning of "deficient performance" in the first prong of the test in the following way:

> In any case presenting an ineffectiveness claim, the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances . . . . No particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal petitioner.

Id. at 688-89, 104 S. Ct. at 2065. The petitioner must establish "that counsel's representation fell below an objective standard of reasonableness under prevailing professional norms." House v. State, 44 S.W.3d 508, 515 (Tenn. 2001) (citing Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996)).

As for the prejudice prong of the test, the Strickland Court explained: "The petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." 466 U.S. at 694, 104 S. Ct. at 2068; see also Overton v. State, 874 S.W.2d 6, 11 (Tenn. 1994) (concluding that petitioner failed to establish that "there is a reasonable probability that, but for counsel's errors, the outcome of the proceedings would have been different"). Courts need not approach the Strickland test in a specific order or even "address both components of the inquiry if the petitioner makes an insufficient showing on one." 466 U.S. at 697, 104 S. Ct. at 2069; see also Goad, 938 S.W.2d at 370 (stating that "failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim").

The petitioner at a post-conviction relief hearing has the burden of proving the allegations of fact by clear and convincing evidence. See Tenn. Code Ann. § 40-30-110(f) (2003). A petition

-4-

based on ineffective assistance of counsel is a single ground for relief, therefore all factual allegations must be presented in one claim. See Tenn. Code Ann. § 40-30-206(d).

We note that when post-conviction proceedings have included a full evidentiary hearing, as in this case, the trial judge's findings of fact and conclusions of law are given the effect and weight of a jury verdict, and this court is "bound by the trial judge's findings of fact unless we conclude that the evidence contained in the record preponderates against the judgment entered in the cause." Black v. State, 794 S.W.2d 752, 755 (Tenn. Crim. App. 1990). The reviewing court must indulge a strong presumption that the conduct of counsel falls within the range of reasonable professional assistance, see Strickland, 466 U.S. at 690, 104 S. Ct. at 2066, and may not second-guess the tactical and strategic choices made by trial counsel unless those choices were uninformed because of inadequate preparation. See Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982). The fact that a strategy or tactic failed or hurt the defense does not alone support the claim of ineffective assistance of counsel. See Thompson v. State, 958 S.W.2d 156, 165 (Tenn. Crim. App. 1997). Finally, a person charged with a criminal offense is not entitled to perfect representation. See Denton v. State, 945 S.W.2d 793, 796 (Tenn. Crim. App. 1996). As explained in State v. Burns, 6 S.W.3d 453, 462 (Tenn. 1999), "[c]onduct that is unreasonable under the facts of one case may be perfectly reasonable under the facts of another."

Since the petitioner pled guilty to the charges, he "must show 'prejudice' by demonstrating that, but for counsel's errors, he would not have pleaded guilty but would have insisted upon going to trial." Hicks v. State, 983 S.W.2d 240, 246 (Tenn. Crim. App. 1998) (citing Hill v. Lockhart, 474 U.S. 52, 59, 106 S. Ct. 366, 370, 88 L. Ed. 2d 203 (1985); Bankston v. State, 815 S.W.2d 213, 215 (Tenn. Crim. App. 1991)). Hill explains the showing of prejudice a petitioner who pled guilty must make:

In many guilty plea cases, the "prejudice" inquiry will closely resemble the inquiry engaged in by courts reviewing ineffective-assistance challenges to convictions obtained through a trial. For example, where the alleged error of counsel is a failure to investigate or discover potentially exculpatory evidence, the determination whether the error "prejudiced" the petitioner by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea. This assessment, in turn, will depend in large part on a prediction whether the evidence likely would have changed the outcome of a trial.

474 U.S. at 59, 106 S. Ct. at 370.

When specifically challenging the attorney's performance or strategy, the petitioner must overcome the presumption of competence. This presumption "is not some presumption that the particular defense lawyer in reality focused on and, then, deliberately decided to do or not to do a specific act," but that "what the particular defense lawyer did at trial--for example, what witnesses he presented or did not present--were acts that some reasonable lawyer might do." Chandler v.

United States, 218 F.3d 1305, 1314 n.15 (11th Cir. 2000). To overcome this presumption, "a petitioner must establish that no competent counsel would have taken the action that his counsel did take." Id. at 1315 (footnote omitted). Additionally, a petitioner cannot receive relief on the claim of an attorney's failure to bring in evidence and witnesses "unless he can produce a material witness who (a) could have been found by a reasonable investigation and (b) would have testified favorably in support of his defense if called." Black, 794 S.W.2d at 757-58.

The post-conviction court accredited trial counsel's testimony and found that the "[p]etitioner's guilty plea was supported by the facts." We note that, at the submission hearing, the petitioner agreed with the State's recitation that he collided with the victims' vehicle, injuring the victims, on September 5, 1999, while having minimal amounts of drugs in his system. The post-conviction court found that the "[p]etitioner's guilty plea [transcript] clearly shows not only that [the trial judge] explained [to him] his constitutional rights, but also that [the] [p]etitioner understood those rights and declined [the trial judge's] offer to further explain those rights to him" and that "the [p]etitioner knowingly and voluntarily pled guilty to the charges against him." Moreover, the court ruled that the "[p]etitioner has not proven that [trial counsel's] work was not 'within the range of competence demanded of attorney's [sic] in criminal cases,' and that his case was prejudiced as a result of counsel's ineffectiveness."

The transcript of the submission hearing shows the petitioner was questioned as to his entering the pleas of guilty, and the court found him "competent and ably represented" and his pleas "voluntary." As the petitioner entered his pleas, he affirmed his understanding that he was pleading guilty to "three separate crimes . . . and all of them will go on [his] record" and that he "will be on probation for this three-year period." He also responded, "No, sir," when the court asked him if it needed to "explain [his] rights further." Lastly, when the court asked the petitioner how he chose to plead to each count of reckless endangerment and the DUI, first offense, he responded, "Guilty."

Trial counsel testified that, in investigating the matter, he relied on the petitioner's statement to him, which was brief since the petitioner had no recollection of the accident, and completed his investigation which produced no reasonably favorable witnesses since the petitioner provided no names of people he saw before the accident. According to his notes, the accident occurred before the petitioner met with Tonya Whited. The submission hearing transcript shows the petitioner was fully advised of his rights and voluntarily pled guilty to DUI and reckless endangerment. Since he did not testify at the evidentiary hearing about his guilty pleas, there is no reason to doubt counsel's assertion that the petitioner freely and voluntarily pled guilty. The record supports the post-conviction court's determination that the petitioner failed to establish counsel was ineffective.

To establish that he was prejudiced by trial counsel's allegedly ineffective representation, the petitioner asserts that he would not have pled guilty if trial counsel had properly investigated and informed him of the consequences of pleading guilty. However, we conclude that the record supports the post-conviction court's determination that counsel properly investigated the case and informed the petitioner of his rights and the consequences of pleading guilty. As we previously have set out, the petitioner was questioned at length by the trial court before the acceptance of the pleas

of guilty. Although he argues on appeal that he would not have pled guilty, absent counsel's errors, the fact remains that the only proof in this regard he presented at the evidentiary hearing was the testimony of his father, who claimed it was he, and not the petitioner, who had accepted the guilty plea. The testimony of the petitioner's trial counsel, accredited by the post-conviction court, and the transcript of the submission hearing, belie this claim.

## CONCLUSION

Based upon the foregoing authorities and reasoning, we affirm the post-conviction court's denial of the petition.

_____
ALAN E. GLENN, JUDGE